Jones, J.
The question presented by this record is whether plaintiff, upon the allegations of his petition and under the statements made by him in open court, stated sufficient facts upon which his case could go to the jury.
It would seem that the court of common pleas, in the colloquy that took place between the court and the counsel for plaintiff below, took the view that plaintiff could not recover because the written agreement did not bind the plaintiff to convey the stock to the defendant or fix the time and place for the delivery of the same. It is conceded by the *50 record that the plaintiff did not sign the memorandum of agreement. The statement of counsel that he expected to prove a verbal arrangement by which the contract would be satisfied by the delivery of all but 15 or 20 of the outstanding 124 shares was wholly irrelevant. In this regard the memorandum is clear and definite and called for the delivery not only of the' 126 shares of stock owned by the plaintiff but the full balance of the 124 shares outstanding, and any statement made by counsel tending to show that a less number of shares would satisfy this obligation would be incompetent as proof upon the trial. Had the contracting parties, by memorandum, provided that the time or place of delivery should be made the essence of the contract it would have to be complied with. In the absence of stipulation, the time of delivery must be held to mean that delivery could be made of the stock within a reasonable time, and the place of delivery should be at the office of defendant.
It is contended by plaintiff in error that the contract is invalid because of a lack of both mutuality and consideration. The promise of the defendant to buy and the agreement of the plaintiff to deliver furnish that necessary consideration, one for the other. Under a memorandum of this character, so long as the contract remained executory and not accepted, the defendant had a right to withdraw the offer. However, after an acceptance the contractual obligations became mutual.
The chief contention of the plaintiff in error in this case is that there is a lack of mutuality because *51 of the Ohio statute of frauds relating to the sale of personal property; that since the plaintiff did not sign the written memorandum as the person to be charged, there was no obligation upon his part to procure the stock, and that there was a lack of mutuality because, while the defendant was bound the plaintiff was not.
Section 8384 (1), General Code, provides: “A contract to sell or a sale of any goods or choses in action of the value of twenty-five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold, or sold, and actually receive them, * * * unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf. * * *
“(3). There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods.”
Inasmuch as the plaintiff below did not sign the memorandum of agreement but verbally agreed to sell shares of corporate stock of more than the value of $2,500, it is not open to question but that the undertaking on his part fell within the statute of frauds relating to sales of personal property.
That sales of corporate ■ stock fall within the meaning of “goods, wares or merchandise” has been sustained by the weight of authority in the different jurisdictions of this country. 20 Cyc., page 244, and authorities cited.
*52 These authorities all recognize the fact that sales of shares of stock in corporations have become such a large part of the commerce of this country that they must be. held to be included in the terms of “goods, wares and merchandise,” and by force of our own.statute, Section 8456 (1), General Code, “goods” are defined to “include all chattels personal other than things in action and money.”
The record in this case discloses that the buyer, through its officers, took charge of the kindred laundry company, its plant and all its assets, and operated the same for a period of about two weeks’ time or more; that while in the possession and operation of this plant, and at the time they repudiated the contract of purchase, they had knowledge of the fact that all but 8 of the 250 shares of stock were in the possession of the bank ready for delivery and that the remaining 8 shares would be available in a very short time.
Section 8384 (1), General Code, supra, provides that, verbal contracts “shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold.” Subdivision 3 of that section provides that, “There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods.”
Under the facts stated it was for the jury to determine whether or not the acts and conduct of the defendant in the possession and operation of *53 the plant were of such character as to show an acceptance under the contract of 242 shares of stock that had been deposited with the National Bank of Commerce for delivery to the defendant.
In the case of Ford v. Howgate, 106 Me., 517, a case similar in character came up for review. In that case the syllabus is: “A contract to sell corporate stock was taken outside the statute of frauds by the buyer entering upon the management of the corporate business as an owner.”
The question in that case was whether the possession by the defendant was sufficient to show an acceptance of the contract for the sale of unissued stock in a corporation. The evidence showed that the defendant went into the company’s shop and assisted in the business of the corporation for ten days. The court held that such possession was evidence justifying a finding that the contract had become executed, the court saying in the opinion: “And what more significant act could the defendant have done to evidence his ownership of the shares, and to show that the contract was executed, than to enter into the management of the business of the corporation as owner?”
In the absence of time stipulated in the agreement for the delivery of shares of stock, the plaintiff had a right to a reasonable time to procure such delivery. By its letter of February 16, 1910, the defendant undertook to say that they had waited a reasonable time for the delivery of this stock and repudiated the agreement. The question whether the time was a reasonable one or otherwise, at the *54 time of repudiation, was a fact to be determined by the jury under all the circumstances of the case.
Plaintiff in error also contends that there is no allegation in the pleading or statement tending to show that the shares were properly indorsed and ready for transfer or that an offer was made to transfer them on the books of the corporation.
Section 8673-1, General Code, provides that title to shares of corporate stocks shall be transferred by delivery of the certificate indorsed in blank or to a specific person. Though the section was adopted subsequent to this transaction, it simply carried into statute law the legal principle theretofore prevailing; and if it appears upon the trial that these shares were so indorsed and ready for delivery the plaintiff has complied with all the requirements in that respect.
In view of what is said the contention that the place of delivery should have been designated in the memorandum, becomes academic. By reason of acceptance under a verbal arrangement, the place of delivery could likewise be agreed upon verbally. The place of delivery agreed upon was the Bank of Commerce, and the obligation to pay was concurrent with the obligation to deliver at that bank.
The allegation in the petition that all of said 250 shares of stock on February 10, 1910, were delivered to the Bank of Commerce in accordance with the provisions of the contract, was sufficient to sustain the sufficiency of that pleading.
The judgment of the court of appeals is affirmed *55 and the case remanded to the common pleas court for further proceedings.

Judgment affirmed.

Nichols, C. J., Johnson, Donahue, Wanamaker, Newman and Matthias, JJ., concur.